SAMUEL BOMES *vs.* PROVIDENCE LOCAL No. 223 OF THE MOTION PICTURE OPERATORS OF THE UNITED STATES AND CANADA *et al.*

JUNE 30, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J.   This is a bill in equity brought by complainant, the owner and operator of the Liberty Theatre on Broad street in Providence, praying for an injunction to restrain the respondents from interfering with complainant's business by picketing or patrolling the sidewalk or street in front of or near said theatre for the purpose of interfering with any persons entering or leaving the theatre.

The respondents are Local No. 223, an unincorporated organization of motion picture machine operators, and Philip F. Suparman, Herbert F. Slater and Abraham Kroll, members of said organization.

The cause was heard by a justice of the Superior Court upon bill, answer, replication and oral proof.   The decision was for the complainant.   By the decree of the court, respondents were enjoined "from picketing or patrolling the sidewalk or street in front of or near complainant's theatre for the purpose of preventing or persuading any person or persons from entering said theatre; and from annoying, hindering, obstructing or interfering with any person or persons who may be entering or leaving or about to enter or leave said theatre while in the employment of the complainant at said theatre, or who may desire to enter such employment, and from intimidating or coercing by threats or otherwise any such person or persons."   The cause is in this court on respondents' appeal the reason of which is that said decree is against the law and the evidence.

The trial justice found the facts as follows:   Complainant has in his employ two operators of his motion picture machine; the respondents attempted to force complainant to make a contract with the union to employ only members of the union; to accomplish their purpose, respondents began

proceedings in the nature of a boycott against the theatre; at such times as the theatre was open for business, two members of the union paraded back and forth on the sidewalk in front of the theatre with paper placards on their hats upon which, conspicuously printed were the words, "This theatre does not employ union moving picture machine operators affiliated with the American Federation of Labor." This picketing was done under instructions from the union; one of these pickets pushed against a young woman who was about to enter the theatre and told her not to enter, that it was dangerous to go inside; other patrons who were about to enter the theatre were also approached by the pickets and told it was dangerous to enter; one patron was stopped on the sidewalk near the entrance by a picket who said: "I know you won't go into a scab place, a non-union place."

Since the institution of the picketing complainant's receipts from his business have fallen off. It appears in evidence that a contract between the respondent union and the complainant had expired in June, 1927, and the union, in June, 1928, had withdrawn the union operators from the theatre. A short time before the acts complained of occurred, an agent of the international association, with which the local union is affiliated, went with Mr. Slade to complainant's theatre and tried to get him to make a contract with the union. After he refused to make such a contract, respondents, in January, 1930, organized and established a systematic picketing of the theatre and the present proceedings were then begun.

The entrance from the sidewalk to the lobby of the theatre is 30 feet wide. On each side of this entrance there is a small store not connected with the theatre. The proprietor of one of the stores objected to the presence of the pickets in front of his store. Thereafter the two pickets walked, either together or singly, back and forth on the sidewalk in front of the theatre entrance usually at times when a performance was beginning or ending.

The respondent Slade, who is the president and business manager of the local union, was appointed by the executive board of the union to direct the picketing. Mr. Slade assigned and relieved the pickets every two hours and supervised their method of operation. He parked his automobile on the side of the street opposite the theatre entrance. When he wished to instruct or change the pickets he blew his automobile horn. This was a summons to the pickets who crossed the street to his automobile, received his instructions and then returned to the theatre entrance.

Complainant's machine operators work singly, by reliefs. They enter and leave the theatre by a side door on the south side and do not use the front entrance at all.

Respondents claim their picketing was lawful and that any coercion or intimidation of the patrons of the theatre was unauthorized and forbidden. The findings of fact by the trial justice are to the contrary and the evidence sustains such findings. Respondents ask that the injunction decree be modified so as to permit picketing without coercion or intimidation. The question raised, as thus appears, is limited by the facts of this particular case. It is not a question of the right to picket in a strike or in a labor controversy between an employer and his employees. Complainant's employees are satisfied with their wages and the conditions under which they work. There has been no intent nor attempt by respondents to persuade these employees to join the union or to refuse to work for less than the union rate of wages.

The primary and plain object of the picketing was to injure complainant's business and thereby to force him, not merely to employ union men, but to make a contract to do so for a considerable period of time.

The respondents have the right to persuade the public by any lawful means to patronize or to refuse to patronize complainant's theatre. But this right is not superior to the right of complainant to conduct his business free from unlawful interference. The attempt to unionize complainant's

theatre may result in actual injury to complainant but it is not a legal injury unless the damage resulting therefrom is caused by a violation of a legal right of the complainant. There is a violation of such a legal right when the methods used are coercive. This principle was recognized and approved in *Macauley Bros.* v. *Tierney,* 19 R. I. 255.

This is the first time that the question of picketing has arisen in this court. The decisions on that question in the State and Federal courts and the reasons therefor are many and conflicting. See 6 A. L. R., p. 894 and pp. 916-981. We think that much of the uncertainty and confusion in the reported decisions results from the attempt to establish a general rule of law which shall govern in every labor controversy; but no such general rule has yet been established and each case must be decided upon consideration of the facts and of the rights of the opposing parties.

Picketing, if it is peaceful and unaccompanied by coercion, duress or intimidation, is lawful. See *American Foundries* v. *Tri-City Council,* 257 U. S. 184. The difficulty is in deciding in a particular case whether the methods actually used are lawful or unlawful. The trial justice was of the opinion that the action of the respondents was in the nature of a secondary boycott. This has been defined as a combination to influence A. by exerting some sort of economic or social pressure against persons who deal with A. See Labor Injunction, Frankfurter & Greene, p. 43 and cases cited. To affix a name to particular actions complained of is a matter of description; it does not help materially in the decision of the question of the lawfulness of the acts.

It is unnecessary in the instant case to attempt to define the limits within which persons, combining for their own advantage to do acts injurious to the business of another, may legally proceed to accomplish that result. Granting that peaceful picketing is lawful and the display of placards of the kind in question on the public street is lawful, all the authorities agree that such actions are unlawful when accompanied by coercion or intimidation. *Goldberg &c. Co.*

v. *Stablemen's Union*, 149 Cal. 429; *St. Germain* v. *Bakery & C. Workers' Union*, 97 Wash. 282; *Bull* v. *International Alliance*, 119 Kan. 713; *Steffes* v. *Motion Picture M. O. U.*, 136 Minn. 200.

The respondents have been enjoined from picketing only in front of or near the theatre for the purpose of preventing or persuading persons from entering the theatre and from obstructing or interfering with employees who may be entering or leaving the theatre. The only restraint imposed on the giving of information to or the persuasion of the public is upon picketing in a very limited area which is filled with traffic. The course of conduct of the respondents has been such as to demonstrate the danger of injury to complainant's business if picketing near the theatre entrance is now authorized by the court.

In the circumstances and in view of the deliberate violation by respondents of the rights of complainants, we think that to now permit any picketing in the limited space near the theatre would inevitably result in the obstruction of the public use of the street and sidewalk and an added injury to complainant. For the reasons stated we are of the opinion that the injunction was warranted in this case.

The decree of the Superior Court is affirmed and the appeal therefrom is denied and dismissed. The cause is remanded to the Superior Court for further proceedings.

HAHN, J., dissenting. In a labor dispute it is lawful and proper to bring to the attention of the public the fact that a particular business or industry does not employ union labor. *Exchange Bakery* v. *Rifkin*, 245 N. Y. 260. If the business or industry be a theatre or moving picture house which employs comparatively few persons, it is lawful and proper for a labor organization to notify the public that the particular theatre does not employ union labor in order that the public may be made acquainted with this fact and withhold their patronage therefrom if they desire so to do. Such a notice may be given in several ways and a common and usual method is by having men walk on the sidewalk in

front of the place of business carrying a placard or banner on which is printed the information desired to be made public. In the instant case a moving picture theatre employed two operators of the picture machines. Originally union men were employed in the theatre and thereafter the owner refused to deal with the union and employed non-union men. This he had a legal right to do. The respondent Local No. 223, being a branch of the Union of Motion Picture Operators, had two men patrol the sidewalk in front of the complainant's theatre. These two men had upon their hats placards, which are exhibits in this case, having printed thereon the following words: "This Theatre Does Not Employ Union Moving Picture Machine Operators Affiliated with the American Federation of Labor." This was a true statement of fact.

The evidence shows that the two men were there for some time and walked up and down the sidewalk before the theatre and that they used no intimidation, duress or physical force to prevent patrons from entering the theatre other than in certain specific cases in which they are charged with conduct which will be hereinafter discussed. While it has been held, and is undoubtedly the law, that if picketing is accompanied by violence, intimidation, duress or physical force to such an extent as to interfere with the conduct of a business, an injunction should be entered restraining future picketing on the basis that by doing such acts it has been shown that peaceful picketing will not accomplish the purpose desired but the evidence of this fact should be clear and convincing. In the instant case, however, there is no substantial evidence of intimidation, duress, physical force or coercion.

It is alleged that one of the men named Kroll by his acts and words prevented prospective patrons from entering the complainant's theatre. The testimony is that he spoke to four people; one of them, a brother-in-law of the complainant, who had been known to Kroll personally for twenty years and as brother-in-law of the complainant for many years; another, a man who had been engaged in many business transactions with said complainant and the third,

two women, one of whom was well enough acquainted with said complainant as to be authorized to enter the theatre without tickets in order to escort a child therein from the theatre to her home. In each of these cases it is alleged that Mr. Kroll said: "Don't go in there, it's dangerous." The making of such statements is denied by Mr. Kroll. It does not appear in evidence what effect these words had upon the brother-in-law and the business associate of the proprietor. The alleged use of such words in addressing these two men would have had so little weight with them that Mr. Kroll's denial of the use of the words is undoubtedly true. As to the two women it appears that they sought to get into a conversation with Kroll before entering the theatre. In my opinion the evidence in this case utterly fails to show an abuse of the right of the respondents to notify the public that the theatre did not employ union help.

The record leads strongly to the conclusion that the real basis of this complaint arises from the fact that complainant's business was affected by the publicity given to his position in regard to labor. Had there been any substantial interference with his business by threats or otherwise he would have had little difficulty in establishing the same much more convincingly by disinterested witnesses.

The Superior Court found that the respondent Kroll had spoken to the four persons above mentioned and entered a restraining order enjoining all respondents, its employees, agents and servants from picketing or patrolling the sidewalk or street in front of or near complainant's theatre for the purpose of preventing or persuading any person or persons from entering said theatre.

On the evidence presented an injunction absolutely prohibiting all picketing in front of this theatre is not warranted and the appeal should be sustained and the decree reversed.

SWEENEY, J., concurs in the dissenting opinion of HAHN, J.

*McGovern & Slattery, Robinson & Robinson,* for complainant.

*Sherwood, Heltzen & Clifford, Sidney Clifford,* for respondents.