Complainant proposed to reduce the wages of its routemen; their repartee was a demand for an increase. Rebuffed, they walked out in a body. The strikers are not members of any union; they number only sixteen, and their places in complainant's organization were immediately filled. So they have called for aid on the customers whom they formerly served, and have distributed among them printed notices reading: *Page 509 
"Perfect Laundry routemen on strike for a living wage. Kindly co-operate by not sending your bundle to the Perfect Laundry.
 Thank you, Your Routeman."
The strikers have also orally told customers their alleged grievance and have asked that patronage be withheld until the strike is settled. Complainant seeks an injunction against such interference with its business, on the ground that defendants are conducting an illegal boycott and are violating a covenant which each made with complainant.
The employment contract, a very lengthy printed document, includes the following:
"The employee further agrees that he will not within the period of one year after the termination of his employment in any way, directly or indirectly, solicit, divert, take away or attempt to solicit, divert or take away, any of the customers, business or patronage of such customers as were served by the company during his period of employment, * * *."
This contract, prepared by complainant doubtless with the advice of counsel, should be construed most strongly against the company. Ambiguities must be resolved in favor of the employe.J.I. Kislak, Inc., v. Muller, 100 N.J. Eq. 110, 116; SarcoCo. v. Gulliver, 3 N.J. Mis. R. 641; affirmed, 99 N.J. Eq. 432.
The general purpose of the paragraph which includes the agreement quoted, was to prevent routemen, who might enter business for themselves or find employment with competitors, from using their acquaintance with complainant's customers to divert its business to themselves or to their new employers. Defendants are not soliciting, diverting or taking away the company's business within the meaning of the covenant.
Is the so-called boycott illegal? The object which the strikers have in view, higher wages, is lawful, of course, and one which will justify their actions, if any object can do so. They may present their cause, truthfully, to the public by placards, or circulars, or by speech, and their employer may do the like. According to the great weight of authority, they *Page 510 
may appeal to friends, to customers, and to the public generally, to assist them by refusing to deal with their employer. If the effect is ruin to the employer, it is damnum absque injuria.
But the law does not permit appeals based on falsehoods or supported by coercion. The persuasion that the law allows is addressed to reason or sentiment and leaves the will free to choose. Local Union No. 313, c., v. Stathakis, 135 Ark. 86;205 S.W. Rep. 450; 6 A.L.R. 894; Rosenberg v. Retail ClerksAssociation, c., 39 Cal. A. 67; 177 Pac. Rep. 864; Watters Son v. Retail Clerks Union, c., 120 Ga. 424; 47 S.E. Rep. 911;Robison v. Hotel and Restaurant Employes, c., 35 Idaho 418;207 Pac. Rep. 132; 27 A.L.R. 642; Ellis v. Journeymen Barbers'International Union, c., 194 Iowa 1179; 191 N.W. Rep. 111;32 A.L.R. 756; Beck v. Railway Teamsters' Protective Union, c.,118 Mich. 497; 77 N.W. Rep. 13; Roraback v. Motion PictureMachine Operators Union, c., 140 Minn. 481; 168 N.W. Rep. 766;Marx, c., Clothing Co. v. Watson, 168 Mo. 133;67 S.W. Rep. 391; Empire Theatre Co. v. Cloke, 53 Mont. 183;163 Pac. Rep. 107; L.R.A. 1917E 383; People v. Hughes, 137 N.Y. 29;32 N.E. Rep. 1105; State v. Van Pelt, 136 N.C. 633; 49 S.E. Rep. 177;S.A. Clark Lunch Co. v. Cleveland, c., Dispensers, c.;22 Ohio App. 265; 154 N.E. Rep. 362; Greenfield v. Central LaborCouncil, c., 104 Or. 236; 207 Pac. Rep. 168; Bomes v.Providence Local, c., 51 R.I. 499; 155 Atl. Rep. 581; UnitedChain Theatres, Inc., v. Philadelphia, c., Union,50 Fed. Rep. (2) 189; Collard v. Marshall (1892), 1 Ch. 571.
Counsel for complainant argue that the law of New Jersey is peculiar in that it forbids all appeals by strikers to the public to stop trading with the employer. Coercion of customers to prevent their dealing with the employer was present in Barr v.Essex Trades Council, 53 N.J. Eq. 101; Booth and Brother v.Burgess, 72 N.J. Eq. 181, and Fink Son v. Butchers' Union,c., 84 N.J. Eq. 638. The injunction in Jonas Glass Co. v.Glass Bottle Blowers' Association, 77 N.J. Eq. 219, prohibited only threats made for the purpose of coercion. Martin v.McFall, 65 N.J. Eq. 91, seems to go *Page 511 
further. Vice-Chancellor Pitney said that the boycott, in whatever form it assumes, is unlawful, and that "it is unlawful for the defendants to attempt to induce or compel complainant to adopt a particular mode of doing his business by persuading or inducing other persons not to deal with him." The purpose of the boycott was to induce Martin to close his shop at eight o'clock (see Van der Plaat v. Undertakers', c., Association, 70 N.J. Eq. 116
(at p. 122), and the insufficiency of the end in view may, perhaps explain the decision. Certainly Vice-Chancellor Stevenson did not consider that Martin v. McFall established the rule that mere persuasion of customers was actionable. InBooth v. Burgess, supra, he said that coercion was "a fact which I think is absolutely essential to the granting of the most important part of the injunctive relief prayed for by the complainant." He observed (at p. 189) that decisions of some courts awarded to the business man "not only a free market but a market where transactions occur naturally according to the ordinary laws of trade and commerce, unaffected, not only by coercion, but also by persuasions or non-coercive inducements from outside parties applied by them with intent and with the effect to interfere with his dealings and thereby to cause him damage. Whether in New Jersey, upon a further development of the law, such a wider right will be recognized and the tort which consists in its violation will be restrained by injunctions, need not be considered in this case."
Lastly, Vice-Chancellor Backes, in Newark Morning Ledger v.Association, 9 N.J. Mis. R. 373; 154 Atl. Rep. 534, held that a newsdealers' association — not employes — had a right to enlist the friendly aid of non-members in refusing to handle a newspaper with which they were at odds.
I am satisfied the New Jersey decisions do not support complainant and that defendants may lawfully seek to persuade complainant's customers to cease dealing with complainant. Order to show cause discharged and temporary restraint vacated. *Page 512